IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT WEST CASUALTY CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 2178 |
| ) | |
| NATIONWIDE AGRIBUSINESS ) | |
| INSURANCE CO.; TIMOTHY A. ) | |
| BRENNAN; and CONSERV FS, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is an insurance coverage dispute, in federal court via diversity jurisdiction. It involves two insurers whose insureds are named as defendants in a wrongful death case pending in state court. Each of the two insurers says that its policy provides "excess" coverage. The plaintiff, Great West Casualty Co., has moved for summary judgment. The motion requires the Court to decide the status of each insurer. In addition, if the Court concludes that both are "excess" insurers, the Court has to decide their relative responsibility regarding defense costs and liability.

### Facts

On June 2, 2021, in Sycamore, Illinois, Patrick Brennan was driving a Chevrolet Equinox, and Robert Fisher was driving a tractor-trailer. Fisher was employed by Deerpass Farms Services, LLC (DFS). The tractor was owed by DFS and leased to a related entity, Deerpass Farms Trucking, LLC-II (DFT2). The trailer was owned by an

unrelated entity, Conserv FS, Inc., and was also leased to DFT2.  Brennan and Fisher both arrived at an intersection.  Fisher allegedly failed to stop at a stop sign, and Brennan collided with the tractor-trailer.  Brennan died from injuries suffered in the collision.  The administrator of his estate sued Fisher, DFS, DFT2, and Conserv, alleging negligence.

Great West Casualty Co. provides liability insurance to DFT2.  Nationwide Agribusiness Insurance Co. provides liability insurance to Conserv.  (The Court omits as unnecessarily complicating the allegations regarding the insured status of Fisher under both policies and the insured status of DFT2 under the Nationwide policy.)

Both sides agree that Nationwide's insurance coverage is "excess" insurance, under the following provision in the Nationwide insurance policy:

> 5. Other Insurance
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance.  For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. *However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is*:
>
> (1) *Excess while it is connected to a motor vehicle you do not own*; or
>
> (2) Primary while it is connected to a covered "auto" you do own.

Great West LR 56.1 Stat. ¶ 29 (emphasis added).  Specifically, under this term of the Nationwide policy, its coverage is excess because the covered auto—the trailer—was connected to another vehicle—the tractor, and that was a motor vehicle that Conserv did not own, as DFS owned the tractor.

The key dispute in this case involves the status of Great West's coverage.  The

2

issues before the Court involve construction of insurance policies. Under Illinois law, which both parties agree governs, the proper interpretation of an insurance policy is a question of law. The usual rules of contract interpretation apply. The primary goal is to ascertain and give effect to the parties' intentions as expressed in the language of the insurance policy. The goal is to give effect to every provision when possible. Terms in an insurance policy are given their ordinary meaning, absent ambiguity. *See generally Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023) (citing cases for each of these propositions).

The operative terms are all in the "Commercial Auto Coverage Part" portion of the Great West policy, and specifically in "Section V – Motor Carrier Conditions," Paragraph B – "General Conditions." The operative, or at least potentially operative, terms read as follows:

> 5.  OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS
>
> . . .
>
> b.  While any covered "auto" is hired or borrowed by you from another "motor carrier" this Coverage Form's Covered Autos Liability Coverage is:
>
> > (1)  Primary if a written agreement between the other "motor carrier" as the less or and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.
> >
> > (2)  Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee require the lessor to hold you harmless.
>
> . . .
>
> e.  Except as provided in Paragraphs a., b., c. and d. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you do not own.

>. . .
>
>g. Regardless of the provisions of Paragraphs a., b., c., d. and e. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract."

Dkt. No. 14-4 (Great West policy) at ECF pp. 41-42 of 137.

The first issue regarding the Great West policy involves Section 5.b. First of all, the Court concludes that a "covered auto"—the tractor—was hired or borrowed by DFT2 from another "motor carrier," namely DFS. Nationwide argues that the tractor was not "hired or borrowed" because it was *leased*. The term "hired or borrowed" is broad enough to include a vehicle that is leased. The proposition that the term "hired or borrowed" is coextensive with, or at least includes, vehicles that are leased is apparent from the language of Section 5.b.(1) and (2) itself, as both (1) and (2) refer to, and only to, leased vehicles. If "leased" in Section 5.b. meant something outside the scope of the term "hired or borrowed," Section 5.b.(1) and (2) would effectively be superfluous. It is a basic principle of contract law that contracts are to be read so as to give meaning to every term and, conversely, to avoid any term being rendered superfluous. *See, e.g., Land of Lincoln Goodwill Indus., Inc. v. PNH Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014). Section 5.b.(1)-(2), which is a single term of the policy, makes it clear from context that "hired or borrowed" *has to* include leased vehicles; nothing else makes sense.

In addition, when the Court asked Nationwide's counsel at oral argument how "borrowed" meant something completely different from "leased," counsel replied that borrowed means "you're not paying for it." That makes no sense; among other things, as the Court pointed out during oral argument, persons who "borrow" money from banks

are typically expected to repay it. Counsel's only other argument was that a separate part of the policy defines the term "leased auto." But here we are dealing with Section 5.b., not some other part of the policy. The Court concludes that the phrase "hired or borrowed" in Section 5.b. includes autos that the insured has leased.

Nationwide and Brennan, who also weighed in on certain aspects of the dispute between the insurers, next argue that DFS is not a "motor carrier" within the meaning of Section 5.b. because it does not meet the definition of motor carrier in US Department of Transportation regulations. But those regulations don't provide the appropriate definition. The term "motor carrier" is defined in the Great West policy itself, as follows: "'Motor Carrier' means a person or organization providing transportation by 'auto' in the furtherance of a commercial enterprise." Dkt. No. 14-4 at ECF p. 45 of 137. DFS is an organization that provides transportation by auto—the tractor[1]—in furtherance of a commercial enterprise—a farm. It therefore meets the policy's definition of a motor carrier.

In sum, Section 5.b. of the Nationwide policy applies, because a covered auto, the tractor, was hired or borrowed (in this case leased) by the insured, DFT2, from another motor carrier, DFS.

The next question involves the application of Section 5.b.(2). That provision says that Great West's insurance is excess coverage "if a written agreement between the other 'motor carrier' as the lessor and [DFT2] as the lessee require the lessor to hold you harmless." Dkt. no. 14-4 at ECF p. 41 of 137. There is such an agreement,

---

[1] The Great West policy defines "Auto" to include "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads . . . ." Dkt. no. 14-4 at ECF p. 43 of 137.

5

specifically, the lease between DFS and DFT2. In that lease, the "Contractor" (DFS) expressly requires to "defend, indemnify, and hold [DFT2] harmless from and against any and all injuries (including death), claims," and so on as a result of any acts or omissions of DFS or its employees, which is what Fisher was. *See* Dkt. no. 14-3 at ECF p. 7 of 17.

For these reasons, the Court concludes that under Section 5.b.(2) of the relevant part of the Great West policy, Great West's coverage is excess coverage.

This does not end the discussion, however. Nationwide also cites Section 5.g., quoted earlier, which says that regardless of Section 5.b. (among other provisions), Great West's insurance is primary "for any liability assumed under an 'insured contract.'" Dkt. no. 14-4 at p. 42 of 137. The Great West policy defines "insured contract," as applicable here, as follows:

> 5. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement . . . .

Dkt. no. 14-4, ECF p. 44 of 137. Nationwide argues that the agreement between Conserv and DFT2—referred to as the Interchange Agreement—is an "insured contract" within the meaning of Section 5.g. That agreement contains the following indemnification provision:

> Release and Hold Harmless. Except to the proportionate extent that any Losses are caused by the negligent acts or omissions of [Conserv], [DFT2] hereby releases and agrees to indemnify, defend and hold harmless [Conserv] . . . from and against any and all claims, lawsuits, causes of action, judgments, expenses, fines, cost [sic], losses, penalties, damages, liabilities and reasonable attorneys' fees for bodily injury (including injury resulting in death) and loss of or damage to property (collectively, "Losses") arising out of or released to [DFT2's] use,

6

>operation, maintenance, possession, or Interchange of [Conserv's] Equipment.
>
>. . .

Dkt. No. 32-1 at ECF pp. 7-8 of 10.

Nationwide argues that any liability of its insured Conserv in the Brennan lawsuit, if any, is "liability assumed under an 'insured contract'" within the meaning of Section 5.(g) of the Great West policy. Specifically, Nationwide argues, Conserv is not alleged to have been negligent in any way with respect to the underlying matter; thus DFT2's liability, if any, is liability assumed under the hold harmless agreement in the Interchange Agreement. (The claim against Conserv in the Brennan lawsuit is based on an assertion of vicarious liability for the alleged negligence of Fisher—DFT2's agent—not on Conserv's own alleged negligence.)

Great West contends that Section 5.g. does not apply. Among other points, Great West cites the policy's definition of "insured contract"—an agreement under which DFT2 "assume[s] the tort liability of another"—and argues that what DFT2 assumed under the Interchange Agreement's hold harmless provision is not "the tort liability *of another*."

The Court agrees with Great West. Any liability that DFT2 assumed under the Interchange Agreement is not someone else's tort liability; rather, DFT2 agreed to indemnify Conserv for liability arising from *DFT2's own actions*. *See, e.g., Hankins v. Pekin Ins. Co.*, 305 Ill. App. 3d 1088, 1093, 713 N.E.2d 1244, 1249 (1999). Thus Section 5.g. of the Great West policy does not apply.

In sum, the Court concludes that Great West's insurance, like Nationwide's, is excess insurance.

7

That leaves the question of who pays what. Great West argues that because of the particular wording of Section 5.b.(2), its coverage is what its lawyer referred to at oral argument as "super excess," in other words excess over Nationwide's excess coverage. The term in Great West's policy says that if the conditions of section 5.b.(2) are satisfied, Great West's insurance is "[e]xcess over any other collectible insurance." Section 5.a.(1) of Nationwide's policy simply says that its insurance is "[e]xcess"; there is no reference to "any other collectible insurance." As support for the proposition that this difference matters, Great West cites a single case, *Truck Insurance Exchange v. Liberty Mutual Insurance Co.*, 102 Ill. App. 3d 24, 428 N.E.2d 1182 (1981). That case does not support the weight that Great West seeks to place on it. In *Truck Insurance Exchange* the court, in reading the excess clauses in the two insurance policies at issue, relied on the insureds' clear intent, as expressed in a lease, to have one insurer provide the primary insurance and the other to provide excess coverage to cover amounts over and above the limits in the primary policy. There is nothing in the present case that is similar. The Court concludes that *Truck Insurance Exchange* does not govern here. The language in the two separate insurance policies is functionally the same: the insurance provided, in the present situation, is excess.

When two insurers are both excess insurers and there is no primary insurer, the two excess provisions effectively cancel each other out, and the two excess insurers share responsibility on a pro rata basis. *See Great West Cas. Co. v. Ross Wilson Trucking*, 550 F. Supp. 3d 579, 586 (C.D. Ill. 2021). That is the case here.

The last question, therefore, is how defense costs and liability get divided. On this, both sides agree: it is done in proportion to the respective policy limits. Language

8

to this effect appears in both policies. Section 5.h. of the relevant part of the Great West policy says that

> [w]hen this Coverage Form and any other Coverage Form, policy or self-insurance covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms, policies and self-insurance covering on the same basis.

Dkt. no. 14-4, ECF p. 42 of 137. The Nationwide policy says exactly the same thing. *See* Great West LR 56.1 Stat. ¶ 29. The limit of the Great West coverage is $1 million; the limit of the Nationwide coverage is $2 million. The two insurers are to share defense costs and liability proportionately to these respective limits.

## Conclusion

The Court grants plaintiff Great West Casualty Co.'s motion for summary judgment [17] to the extent stated in this Memorandum Opinion and Order. The Court will enter a declaratory judgment accordingly. The parties are directed to confer and prepare a proposed judgment order, agreed as to form, consistent with the Court's ruling. A Word version is to be submitted to Judge Kennelly's proposed order e-mail address by no later than January 12, 2024. Entry of the declaratory judgment should conclude all remaining issues in this case, so the Court will close the case following entry of the judgment.

Date: January 9, 2024

_____
MATTHEW F. KENNELLY
United States District Judge